672 S.E.2d 174

BAYER MATERIALSCIENCE, LLC, and Bayer Cropscience, USA, LP, Petitioners Below, Appellants,

v.

STATE TAX COMMISSIONER and the Honorable Phyllis Gatson, Assessor of Kanawha County, and the County Commission of Kanawha County, and the Prosecuting Attorney of Kanawha County, Respondents Below, Appellees.

No. 33378, 33880, 33881.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 3, 2008.

Decided Nov. 19, 2008.

Dissenting Opinion of Justice Benjamin Jan. 9, 2009.

Herschel H. Rose, III, Steven R. Broadwater, Rose Law Office, Charleston, for the Appellants, Bayer MaterialScience, LLC, and Bayer Cropscience USA, LP.

Darrell V. McGraw, Jr., Attorney General, L. Wayne Williams, Assistant Attorney General, Charleston, for the Appellee, Virgil T. Helton, State Tax Commissioner.

Ancil G. Ramey, Hannah B. Curry, Steptoe & Johnson, PLLC, Charleston, for the Appellees, Assessor of Kanawha County, County Commission of Kanawha County, and Prosecuting Attorney of Kanawha County.

Michael E. Caryl, Heather G. Harlan, Bowles Rice McDavid Graff & Love, LLP, Charleston, for Amicus Curiae, The West Virginia Manufacturers Association.

PER CURIAM:[1]

In this companion case to *In re Tax Assessment of Foster Foundation's Woodlands Retirement Community*, 223 W.Va. 14, 672 S.E.2d 150 (2008), the appellants herein and petitioners below, Bayer MaterialScience, LLC and Bayer CropScience USA, LP (hereinafter collectively referred to as "Bayer"),[2] appeal from three orders entered by the Circuit Court of Kanawha County on June 28, 2006; October 2, 2007; and October 23, 2007. By those orders, the circuit court affirmed orders entered February 23, 2006, and February 15, 2007, by an appellee herein and respondent below, the Kanawha County Commission (hereinafter referred to as "the Commission")[3] sitting as the Board of Equalization and Review (hereinafter referred to as "the Board"), which orders had rejected Bayer's challenges to its tax assessments. Before this Court, Bayer's appeals have been consolidated because each of the three appeals assigns identical errors, which errors also were raised in the *Foster* case, namely (1) the procedure for hearing taxpayers' challenges to allegedly erroneous tax assessments is not impartial and denies taxpayers of due process; (2) requiring taxpayers to prove the incorrectness of their tax assessments by clear and convincing evidence denies taxpayers of due process; and (3) the tax assessments of Bayer's property are erroneous. Upon a review of the parties' arguments, the record designated for appellate consideration, and the pertinent authori-

---

1. Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

2. These two parties will be referred to collectively as "Bayer" except where the context requires reference to a specific Bayer appellant.

3. We will also use the term "Commission" to collectively refer to the various Kanawha County appellees in this case, *i.e.*, the County Commission of Kanawha County; the Honorable Phyllis Gatson, Assessor of Kanawha County; and the Prosecuting Attorney of Kanawha County, except where the context requires the designation of a specific party.

ties, we affirm each of the circuit court's three orders.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The appellants in this case, Bayer MaterialScience, LLC and Bayer Cropscience USA, LP, describe themselves as "out-of-state corporation[s] operating in West Virginia." Appellant's Br. at p. 2. The production facility for Bayer MaterialScience is located in South Charleston, West Virginia,[4] while the production facility for Bayer CropScience is located in Institute, West Virginia.[5] In tax year 2006, and again in tax year 2007, one of the appellees herein and respondents below, the State Tax Commissioner (hereinafter referred to as "the Tax Commissioner"), appraised the industrial and real property of the two Bayer companies for purposes of determining the amount of the companies' (1) industrial and personal property taxes and (2) real property taxes. Another of the appellees herein and respondents below, the Assessor of Kanawha County (hereinafter referred to as "the Assessor"), communicated these appraisals to the Bayer companies and used these appraised values in assessing the amount of taxes owed by each of them. The Bayer companies challenged these appraisals, and the tax assessments resulting therefrom, for both tax years.

### A. Tax Year 2006 (Case Numbers 33378 and 33880)

In tax year 2006, Bayer MaterialScience and Bayer CropScience filed separate challenges of their respective tax assessments with the Kanawha County Commission sitting as the Board of Equalization and Review.

1. **Bayer MaterialScience (Case Number 33378).** By "Notice of Appraised Value" dated January 31, 2006, the Assessor notified Bayer MaterialScience that the Tax Commissioner had determined the appraised value of its industrial personal property, specifically its equipment and machinery, to be $42,320,542.[6] Bayer MaterialScience challenged this property valuation before the Kanawha County Commission sitting as the Board of Equalization and Review.

Bayer MaterialScience argued that the Tax Commissioner's appraisal of its equipment and machinery did not account for the property's economic obsolescence [7] due to inutility [8] or excess operating costs. In this regard, Bayer MaterialScience first contended that inutility economic obsolescence should have been calculated at 8.7% of the property's appraised value of $42,320,542, thereby reducing such valuation by $3,681,887. Bayer MaterialScience also asserted that an additional deduction in the amount of $17,400,000 should have been given for economic obsolescence due to excess operating costs. Thus, the revised value of its industrial personal property proposed by Bayer MaterialScience was $21,238,655. Following a hearing on this matter, the Board upheld the Tax Commissioner's appraisals and resulting tax assessments by order entered February 23, 2006.

Following the Board's adverse ruling, Bayer MaterialScience appealed to the Circuit

---

4. It is not apparent from the record in this case what, specifically, Bayer MaterialScience produces. See note 5, infra.

5. Neither can we discern the precise nature of Bayer CropScience's manufacturing. See supra note 4.

6. This number reflects only the value of that portion of Bayer MaterialScience's industrial personal property at issue herein, i.e., equipment and machinery, and includes deductions for physical deterioration and functional obsolescence. See notes 22 & 23, infra.

7. The governing regulations define "economic obsolescence" as "a loss in value of property

arising from 'Outside Forces' such as changes in use, legislation that restricts or impairs property rights, or changes in supply and demand relationships." W. Va.C.S.R. § 110–1P–2.3.5 (1991).

8. "Inutility" is defined as "[t]he quality or state of being useless; want of utility; uselessness, unprofitableness." VIII The Oxford English Dictionary 34 (2d ed. 1991 repr.). In the context of this case, Bayer uses the term "inutility" to refer to the operations of Bayer's facilities at less than their available capacity due to a lack of market demand for their products. Appellant's Br. at pp. 11–12.

Court of Kanawha County. In summary, Bayer MaterialScience complained that the procedure for challenging tax appeals denied appealing taxpayers of due process because the County Commission sitting as the Board served a dual role and was not impartial. Bayer MaterialScience additionally challenged the correctness of its tax assessments and the appraisals upon which they were based. Following a hearing, the circuit court, by order entered June 28, 2006, affirmed the decision of the Board and denied the relief requested by Bayer MaterialScience. The circuit court concluded

1. The assessments by the Tax Commision[er] are presumed to be correct. Petitioner [Bayer MaterialScience] has failed to meet its burden of showing that the Tax Commissioner's assessment was erroneous by clear and convincing evidence. The Tax Commissioner['s] use of the income method to calculate economic obsolescence was well within its discretion and the Tax Commissioner did not abuse its discretion in applying this approach to economic obsolescence. Therefore, the Board did not clearly err or abuse its discretion in finding that Petitioner failed to prove by clear and convincing evidence that the assessments are erroneous. The Board did not clearly err or abuse its discretion in finding that Petitioner failed to prove by clear and convincing evidence and that the Tax Commissioner abused his discretion in considering the economic obsolescence of the subject property.

2. The Board did not clearly err or abuse its discretion in finding that the evergreen contract between Petitioner and Dow was within the original service agreement, which Petitioner agreed to assume in its acquisition of the South Charleston facility. Therefore, the payments made under this contract do not represent additional economic obsolescence and should not be included in the calculation of economic obsolescence.

3. The Court concludes that the Tax Commissioner's assessment of Petitioner's property is supported by substantial evidence in the record and by the testimony of the Tax Commissioner's witnesses. The Court concludes that the Tax Commissioner's assessment of Petitioner's property is not in contravention of any regulation, statute, or constitutional provision.

4. The Court concludes that there is no merit to Petitioner's allegations that it was denied due process. The legislatively mandated system to equalize and review the assessments is set forth in *West Virginia Code*, § 11–3–24, and the Board properly followed the statutes and properly applied the burden of proof to Petitioner's case.

Accordingly, the Court determines that the February 23, 2006 order[ ] of the County Commission of Kanawha County sitting as the Board of Equalization and Review affirming the State Tax Commissioner assessments ... on the personal property of Bayer MaterialScience, LLC, [is] hereby **AFFIRMED** as the Petitioner was unable to prove that the Board clearly erred or abused its discretion. . . .

(Emphasis in original).

**2. Bayer CropScience (Case Number 33880).** By "Notice of Appraised Value" dated January 31, 2006, the Assessor notified Bayer CropScience that the Tax Commissioner had determined the appraised value of its industrial personal property, specifically its equipment and machinery, to be $57,629,774.[9] Additionally, the Assessor notified Bayer CropScience that its 450 acres of industrial real property had been appraised at $18,900,000. Bayer CropScience challenged these property valuations before the Kanawha County Commission sitting as the Board of Equalization and Review.

Bayer CropScience argued that the Tax Commissioner's appraisal of its equipment and machinery did not account for the property's economic obsolescence[10] due to inutili-

---

9. This number reflects only the value of that portion of Bayer CropScience's industrial personal property at issue herein, *i.e.,* equipment and machinery, and also includes deductions for physical deterioration and functional obsolescence. *See infra* notes 22 & 23.

10. *See supra* note 7.

ty[11] and that the Tax Commissioner had improperly classified its industrial real property as three different types of property even though it utilizes its entire 450 acres of real property for the single purpose of housing its manufacturing facility. In this regard, Bayer CropScience first contended that inutility economic obsolescence should have been calculated at 52.7% of the industrial personal property's appraised value of $57,629,774, thereby reducing such valuation by $30,370,890. Thus, the revised value of its industrial personal property proposed by Bayer CropScience was $27,258,884.

Additionally, Bayer CropScience asserted that the Tax Commissioner erroneously classified each of the 34 parcels of real property comprising Bayer CropScience's 450 acres of industrial real property as one of three types of real property: primary, waterfront, or secondary. Using this approach and adding together the appraised values for each of the 34 parcels yields the Tax Commissioner's appraised value for Bayer CropScience's industrial real property of $18,900,000, or approximately $42,000 per acre. By contrast, Bayer CropScience urged that because it uses all of its real property for a single purpose, it should have received one classification, not three classifications, and that the Tax Commissioner's use of three different classifications resulted in overvaluing its industrial real property by $5,900,000. Thus, the revised appraised value of its industrial real property proposed by Bayer CropScience, classifying all of its 450 acres of real property as one type thereof, was $13,050,000, or approximately $29,000 per acre. Following a hearing on this matter, the Board upheld the Tax Commissioner's appraisals and resulting tax assessments by order entered February 23, 2006.

Following the Board's adverse ruling, Bayer CropScience appealed to the Circuit Court of Kanawha County. In summary, Bayer CropScience complained that the procedure for challenging tax appeals denied appealing taxpayers of due process because the County Commission sitting as the Board served a dual role and was not impartial. Bayer CropScience additionally challenged the correctness of its tax assessments and the appraisals upon which they were based. Following a hearing, the circuit court, by order entered October 2, 2007, affirmed the decision of the Board and denied the relief requested by Bayer CropScience. The circuit court concluded

1. The assessments by the Tax Commissioner are presumed to be correct. Petitioner [Bayer CropScience] has failed to meet its burden of showing that the Tax Commissioner's assessment was erroneous by clear and convincing evidence. The Tax Commissioner['s] use of the income method to calculate economic obsolescence was well within its discretion and the Tax Commissioner did not abuse its discretion in applying this approach to economic obsolescence. The Board, therefore, did not clearly err or abuse its discretion in finding that Petitioner failed to prove by clear and convincing evidence that the assessments are erroneous. The Board did not clearly err or abuse its discretion in finding that Petitioner failed to prove by clear and convincing evidence and that the Tax Commissioner abused his discretion in considering the economic obsolescence of the subject property.

2. The assessments of real property by the Tax Department are supported by substantial evidence. The Court concludes that the Kanawha County Commission's affirmation of the Tax Department did not contravene any regulation, statute or constitutional provision.

3. The Court concludes that there is no merit to Petitioner's allegations that it was denied due process. The legislatively mandated system to equalize and review the assessments is set forth in *West Virginia Code*, § 11–3–24, and the Board properly followed the statutes and properly applied the burden of proof to Petitioner's case.

Accordingly, the Court determines that the February 23, 2006 order[ ] of the County Commission of Kanawha County sitting as the Board of Equalization and

11. *See* note 8, *supra.*

Review affirming the State Tax Commissioner's assessments on the real and personal property of Bayer Crop Science, USA, LP [is] hereby AFFIRMED as the Petitioner was unable to prove that the Board clearly erred or abused its discretion.

### B. Tax Year 2007 (Case Number 33881)

Again, in tax year 2007, Bayer MaterialScience and Bayer CropScience filed separate challenges of their respective tax assessments with the Kanawha County Commission sitting as the Board of Equalization and Review. By "Notice of Appraised Value" dated January 11, 2007, the Assessor notified Bayer MaterialScience that the Tax Commissioner had determined the appraised value of its industrial personal property, specifically its equipment and machinery, to be $41,921,884.[12] Similarly, the Assessor, by "Notice of Appraised Value" dated January 11, 2007, notified Bayer CropScience that the Tax Commissioner had determined the appraised value of its industrial personal property, specifically its equipment and machinery, to be $67,424,204.[13] Both Bayer companies challenged these property valuations before the Kanawha County Commission sitting as the Board of Equalization and Review.

Bayer MaterialScience argued that the Tax Commissioner's appraisal of its equipment and machinery did not account for the property's economic obsolescence[14] due to inutility.[15] Accordingly, Bayer MaterialScience contended that such economic obsolescence should have been calculated at 5.4% of the property's appraised value of $41,921,884, thereby reducing such valuation by $2,263,782. Thus, the revised appraised value of its industrial personal property proposed by Bayer MaterialScience was $39,658,102. Following a hearing on this matter, the Board upheld the Tax Commissioner's appraisals and resulting tax assessments by order entered February 15, 2007.

Likewise, Bayer CropScience argued that the Tax Commissioner's appraisal of its equipment and machinery did not account for the property's economic obsolescence[16] due to inutility.[17] Accordingly, Bayer CropScience contended that such economic obsolescence should have been calculated at 44.7% of the property's appraised value of $67,424,204, thereby reducing such valuation by $30,138,619. Thus, the revised appraised value of its industrial personal property proposed by Bayer CropScience was $37,285,585. Following a hearing on this matter, the Board also upheld the Tax Commissioner's appraisals and resulting tax assessments by order entered February 15, 2007.

Following the Board's adverse rulings, the Bayer companies appealed to the Circuit Court of Kanawha County, which appeals were consolidated over Bayer's objection. In summary, Bayer complained that the procedure for challenging tax appeals denied appealing taxpayers of due process because the County Commission sitting as the Board served a dual role and was not impartial. Bayer additionally challenged the correctness of its tax assessments and the appraisals upon which they were based. Following a hearing, the circuit court, by order entered October 23, 2007, affirmed the decisions of the Board and denied the relief requested by both Bayer MaterialScience and Bayer CropScience. The circuit court concluded

> 1. The assessments by the Tax Commissioner are presumed to be correct. Petitioners [Bayer MaterialScience and Bayer CropScience] have failed to meet the burden of showing that the Tax Commissioner's assessments were erroneous by clear and convincing evidence. The Tax

---

12. This number reflects only the value of that portion of Bayer MaterialScience's industrial personal property at issue herein, *i.e.,* equipment and machinery, and presumably includes deductions for physical deterioration and functional obsolescence. *See* notes 22 & 23, *infra.*

13. Similarly, this number reflects only the value of that portion of Bayer CropScience's industrial personal property at issue herein, *i.e.,* equipment and machinery, and presumably also includes deductions for physical deterioration and functional obsolescence. *See infra* notes 22 & 23.

14. *See* note 7, *supra.*

15. *See supra* note 8.

16. *See supra* note 7.

17. *See* note 8, *supra.*

Commissioner's use of the income method to calculate economic obsolescence was well within its discretion and the Tax Commissioner did not abuse his discretion in applying this approach to economic obsolescence. Therefore, the Board did not clearly err or abuse its discretion in finding that Petitioners failed to prove by clear and convincing evidence that the assessments are erroneous. The Board did not clearly err or abuse its discretion in finding that Petitioners failed to prove by clear and convincing evidence and that the Tax Commissioner abused his discretion in considering the economic obsolescence of the subject property.

2. The Court concludes that the Tax Commissioner's assessments of Petitioners' property are supported by substantial evidence in the record and by the testimony of the Tax Commissioner's witness. The Court concludes that the Tax Commissioner's assessments of Petitioners' property is [sic] not in contravention of any regulation, statute, or constitutional provision.

3. The Court concludes that there is no merit to Petitioners' allegations that they were denied due process. The legislatively mandated system to equalize and review the assessments is set forth in West Virginia Code § 11–3–24, and the Board properly followed the statutes and properly applied the burden of proof to Petitioners' case.

Accordingly, the Court determines that Order Number 2007–185 of the County Commission of Kanawha County sitting as the Board of Equalization and Review affirming the State Tax Commissioner's assessments on the industrial personal property of Bayer MaterialScience, LLC., and on the industrial personal property of Bayer CropScience, L.P., are hereby **AFFIRMED** as the Petitioners were unable to prove that the Board clearly erred or abused its discretion. . . .

(Emphasis in original).

### C. Appeals to the Supreme Court of Appeals of West Virginia

From these three orders of the Circuit Court of Kanawha County, the Bayer compa-

nies appealed to this Court. By order entered March 13, 2008, this Court consolidated these cases "for purposes of briefing, argument and decision" due to the commonality of parties involved in and identical errors assigned by the three appeals. Also, by that same ruling, this Court ordered that the case of *In re Tax Assessment of Foster Foundation's Woodlands Retirement Community*, 223 W.Va. 14, 672 S.E.2d 150 (2008), be heard in conjunction with the consolidated case *sub judice* due to the similarity of the issues involved. This Court recently issued an opinion in *Foster*, which decision will be instructive to our determination of the matter presently before us.[18]

## II.

## STANDARD OF REVIEW

On appeal to this Court, Bayer challenges the constitutionality of the review procedures set forth in W. Va.Code § 11–3–24 (1979) (Repl.Vol.2008) and the value of its tax assessments for tax years 2006 and 2007. We review *de novo* assignments of error raising an issue of law or concerning the interpretation of a statute: "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). Specifically, with respect to Bayer's constitutional challenge,

" '[w]hen the constitutionality of a statute is questioned every reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment.' Point 3, Syllabus, *Willis v. O'Brien*, 151 W.Va. 628[, 153 S.E.2d 178 (1967)]." Syllabus Point 1, *State ex rel. Haden v. Calco Awning & Window Corp.*, 153 W.Va. 524, 170 S.E.2d 362 (1969).

Syl. pt. 1, *U.S. Steel Mining Co., LLC v. Helton*, 219 W.Va. 1, 631 S.E.2d 559 (2005),

---

**18.** We also acknowledge the appearance of Amicus Curiae, The West Virginia Manufacturers Association, in this case, and appreciate the Association's participation in these proceedings.

*cert. denied,* 547 U.S. 1179, 126 S.Ct. 2355, 165 L.Ed.2d 279 (2006). Lastly, with respect to Bayer's contention that its tax assessments are erroneous, we review such assessments for plain error:

"' "An assessment made by a board of review and equalization and approved by the circuit court will not be reversed when supported by substantial evidence unless plainly wrong." Syl. pt. 1, *West Penn Power Co. v. Board of Review and Equalization [of Brooke County]*, 112 W.Va. 442, 164 S.E. 862 (1932).' Syl. pt. 3, *Western Pocahontas Properties, Ltd. v. County Comm'n of Wetzel County*, 189 W.Va. 322, 431 S.E.2d 661 (1993)." Syl. pt. 4, *In re Petition of Maple Meadow Mining Co. for Relief from Real Prop. Assessment For the Tax Year 1992*, 191 W.Va. 519, 446 S.E.2d 912 (1994).

Syl. pt. 3, *In re Tax Assessment of Foster Found.'s Woodlands Ret. Cmty.*, 223 W.Va. 14, 672 S.E.2d 150.

Mindful of these standards, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

In each of its appeals, Bayer assigns three errors: (1) the procedure by which taxpayers challenge erroneous tax assessments violates due process because the hearing is not held before an impartial hearing tribunal; (2) the burden of proof a taxpayer challenging an erroneous tax assessment must satisfy, *i.e.*, clear and convincing, violates due process because no corresponding burden is placed upon the Assessor or the Commission; and (3) the tax valuations of Bayer's real and industrial property are erroneous. We will consider each of these assigned errors in turn.

### A. Impartiality of Hearing Tribunal

Bayer first assigns error to the manner in which taxpayers are required to challenge an erroneous tax assessment. Specifically, Bayer complains that the procedure set forth for taxpayer appeals in W. Va.Code

§ 11–3–24 (1979) (Repl.Vol.2008) violates due process because it does not provide taxpayers with a hearing before an impartial hearing tribunal. *See* U.S. Const. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law[.]"); W. Va. Const. art. III, § 10 ("No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers."); Syl. pt. 2, *State ex rel. Ellis v. Kelly*, 145 W.Va. 70, 112 S.E.2d 641 (1960) ("Due process of law, within the meaning of the State and Federal constitutional provisions, extends to actions of administrative officers and tribunals, as well as to the judicial branches of the governments."). *See also Concrete Pipe & Prods. of California, Inc. v. Construction Laborers Pension Trust for S. California*, 508 U.S. 602, 617, 113 S.Ct. 2264, 2277, 124 L.Ed.2d 539 (1993) ("[D]ue process requires a 'neutral and detached judge in the first instance[.]'" (quoting *Ward v. Village of Monroeville*, 409 U.S. 57, 61–62, 93 S.Ct. 80, 84, 34 L.Ed.2d 267 (1972))). Bayer argues that because W. Va.Code § 11–3–24 directs county commissions to sit as boards of equalization and review for the purpose of hearing taxpayers' challenges and because county commissions benefit from the tax revenue generated by the county in which they sit, county commissions serving this dual role are not impartial.

Both of the appellees herein, the Tax Commissioner and the Commission,[19] dispute Bayer's assertions and claim that the taxpayer appeals process satisfies the requirements of due process. Bayer was permitted to challenge its allegedly erroneous tax assessments before the Board and then to appeal those adverse rulings to the circuit court. Therefore, the appellees argue that Bayer had an opportunity to be heard before an impartial hearing tribunal and, thus, received the process it was due.

The statute at issue herein, W. Va.Code § 11–3–24, sets forth the procedure by which a county commission sits as a board of equalization and review to examine and adopt the assessor's tax books. This provision also instructs taxpayers wishing to challenge an

---

19. *See* note 3, *supra*.

allegedly erroneous tax assessment. In pertinent part, W. Va.Code § 11–3–24 provides as follows:

The county commission shall annually ... meet for the purpose of reviewing and equalizing the assessment made by the assessor.... At the first meeting, the assessor shall submit the property books for the current year, which shall be complete in every particular, except that the levies shall not be extended. The assessor and his assistants shall attend and render every assistance possible in connection with the value of property assessed by them. The commission shall proceed to examine and review the personal property and the description and value of real estate liable to assessment which was omitted by the assessor. They shall correct all errors in the names of persons, in the description and valuation of property, and they shall cause to be done whatever else may be necessary to make the valuation comply with the provisions of this chapter. But in no case shall any question of classification or taxability be considered or reviewed. If the commission determine[s] that any property or interest is assessed at more or less than its true and actual value, it shall fix it at the true and actual value....

The clerk of the county commission shall publish notice of the time, place and general purpose of the meeting as a Class II legal advertisement ... and the publication area for such publication shall be the county involved....

If any person fails to apply for relief at this meeting, he shall have waived his right to ask for correction in his assessment list for the current year, and shall not thereafter be permitted to question the correctness of his list as finally fixed by the county commission, except on appeal to the circuit court....

To mount a successful challenge regarding the constitutionality of a statute, an appellant, such as Bayer in the case *sub judice,* faces a formidable task given the presumption of a statute's constitutionality. In this regard, we have held that

" '[w]hen the constitutionality of a statute is questioned every reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment.' Point 3, Syllabus, *Willis v. O'Brien,* 151 W.Va. 628[, 153 S.E.2d 178 (1967)]." Syllabus Point 1, *State ex rel. Haden v. Calco Awning & Window Corp.,* 153 W.Va. 524, 170 S.E.2d 362 (1969).

Syl. pt. 1, *U.S. Steel Mining Co., LLC v. Helton,* 219 W.Va. 1, 631 S.E.2d 559. The reasoning underlying this presumption of constitutionality was reiterated in Syllabus point 1 of *Louk v. Cormier,* 218 W.Va. 81, 622 S.E.2d 788 (2005):

"In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt." Syl. pt. 1, *State ex rel. Appalachian Power Company v. Gainer,* 149 W.Va. 740, 143 S.E.2d 351 (1965).

With respect to the constitutionality of the statute at issue herein, W. Va.Code § 11–3–24, Bayer contends that permitting county commissions to sit as boards of equalization and review to hear and decide taxpayers' challenges of allegedly erroneous tax assessments unconstitutionally deprives such taxpayers of a hearing before an impartial tribunal. We recently considered and resolved this same constitutional inquiry in the companion case to this consolidated appeal, *In re Tax Assessment of Foster Foundation's Woodlands Retirement Community,* 223 W.Va. 14, 672 S.E.2d 150 (2008). In *Foster,* after conducting the requisite statutory construction and constitutional analyses, we de-

termined that the procedure for hearing and deciding taxpayers' appeals adopted by the Legislature in W. Va.Code § 11–3–24 is constitutional: "W. Va.Code § 11–3–24 (1979) (Repl.Vol.2008), which establishes the procedure by which a county commission sits as a board of equalization and review and decides taxpayers' challenges to their property tax assessments, is facially constitutional." Syl. pt. 4, *Foster*, 223 W.Va. 14, 672 S.E.2d 150. Applying this holding to the decisions of the circuit court, which found that the subject statute had not deprived Bayer of due process, we find that Bayer is not entitled to relief on this issue because the statute of which it complains, W. Va.Code § 11–3–24, is constitutional. Accordingly, we affirm the circuit court's rulings.

### B. Burden of Proof by Clear and Convincing Evidence

For its second assignment of error, Bayer complains that it also was denied due process by the onerous burden of proof imposed upon taxpayers challenging allegedly erroneous tax assessments. Bayer first contends that a taxpayer's burden of proof before a Board of Equalization and Review is by a preponderance of the evidence; thus, Bayer argues that requiring it to sustain its claims for relief before the Board by clear and convincing evidence was wrong. Additionally, Bayer asserts that requiring taxpayers to prove by clear and convincing evidence the erroneousness of their tax assessments is unconstitutional because the Tax Commissioner is not held to a corresponding standard. In response, the Tax Commissioner and the Commission reply that a taxpayer challenging the correctness of a tax assessment must prove his/her claim for relief by clear and convincing evidence. Such a standard, which the appellees respond is often used in other types of cases, is not unconstitutional and does not deny appealing taxpayers of due process.

■ At the outset, we note that Bayer's assignment of error on this point challenges both its burden of proof, *i.e.*, by clear and convincing evidence, and its burden of persuasion insofar as neither the Tax Commissioner nor the Assessor are required to prove the correctness of their assessments. We

have repeatedly recognized, though, that it is customary to require the party seeking relief to carry the burden of persuasion: "[i]t is a well-established rule of law that in civil actions the party seeking relief must prove his right thereto." *Boury v. Hamm*, 156 W.Va. 44, 52, 190 S.E.2d 13, 18 (1972). Accordingly,

> when a plaintiff comes into court in a civil action he must, to justify a verdict in his favor, establish his case .... The burden of proof, meaning the duty to establish the truth of the claim ..., rests upon him from the beginning, and does not shift, as does the duty of presenting all the evidence bearing on the issue as the case progresses.

*Burk v. Huntington Dev. & Gas Co.*, 133 W.Va. 817, 830, 58 S.E.2d 574, 581 (1950), *modified on other grounds, Foster v. City of Keyser*, 202 W.Va. 1, 501 S.E.2d 165 (1997). *See also Mayhew v. Mayhew*, 205 W.Va. 490, 497 n. 15, 519 S.E.2d 188, 195 n. 15 (1999) (explaining differences between burden of proof and burden of persuasion). In order to sustain its burden of persuasion as to its claims for relief, then, Bayer is required to carry the burden of proof.

■ In the companion case to the instant proceeding, *Foster*, we considered the same arguments questioning the burden of proof applicable to taxpayers' challenges of allegedly erroneous tax assessments and the constitutionality of a clear and convincing burden of proof. We determined in *Foster* that the burden of proof a taxpayer challenging an erroneous tax assessment must sustain is by clear and convincing evidence, not by a preponderance of the evidence: "A taxpayer challenging an assessor's tax assessment must prove by clear and convincing evidence that such tax assessment is erroneous...." Syl. pt. 5, in part, *In re Tax Assessment of Foster Found.'s Woodlands Ret. Cmty.*, 223 W.Va. 14, 672 S.E.2d 150.

■ We also considered, in *Foster*, a constitutional challenge that is identical to that raised by Bayer in the case *sub judice, i.e.*, whether requiring an appealing taxpayer to prove his/her claim for relief by clear and convincing evidence denies him/her due process. In *Foster*, we found no denial of due

process and concluded that requiring an appealing taxpayer to prove his/her entitlement to relief by clear and convincing evidence was constitutional:

> Requiring a taxpayer challenging a property tax assessment in accordance with W. Va.Code § 11–3–24 (1979) (Repl. Vol.2008) to prove by clear and convincing evidence that the assessor's assessment is erroneous does not violate the constitutional due process protections provided by section one of the Fourteenth Amendment to the United States Constitution or by section ten of Article III of the West Virginia Constitution.

Syl. pt. 6, *In re Tax Assessment of Foster Found.'s Woodlands Ret. Cmty.*, 223 W.Va. 14, 672 S.E.2d 150. Applying this holding to the case *sub judice*, we likewise find no constitutional infirmity with the clear and convincing burden of proof required to be borne by Bayer in challenging its tax assessments. Because it was proper to require Bayer to prove that its tax assessments were erroneous by clear and convincing evidence and because it was not denied due process by requiring it to satisfy this burden of proof, we affirm the circuit court's rulings insofar as they determined that Bayer was not denied due process of law in the underlying proceedings challenging the correctness of its tax assessments.

### C. Correctness of Tax Assessments

In its final assignment of error, Bayer complains that the tax assessments of its industrial real and personal property were erroneous.[20] Specifically, Bayer contests the methods by which the Tax Commissioner appraised said property. With respect to the tax assessments of Bayer's industrial personal property, *i.e.*, equipment and machinery,

Bayer sets forth three arguments that apply to both the 2006 and 2007 assessments of both Bayer MaterialScience's and Bayer CropScience's industrial personal property. First, Bayer asserts that, in using the cost approach to appraise said property for taxation purposes, the Tax Commissioner did not deduct an amount for economic obsolescence.[21] Although the Tax Commissioner accounted for physical deterioration[22] and functional obsolescence,[23] reducing the appraised values of the property accordingly, Bayer asserts that the Tax Commissioner did not consider the property's depreciation in terms of economic obsolescence under the cost approach. The Tax Commissioner and the Commission respond that the cost approach was the preferred method by which to appraise Bayer's industrial personal property and that Bayer has failed to present clear and convincing evidence to prove that this valuation was erroneous.

Second, Bayer contends that when the Tax Commissioner calculated the economic obsolescence depreciation of its industrial personal property, he improperly used the income approach instead of the cost approach. In support of this contention, Bayer suggests that the income approach was not the most reliable or accurate appraisal method and the requisite data for this method were not available. In its brief to this Court, Bayer admits that it "does not account for its revenue (i.e., *income*) on a plant-by-plant basis, and thus there were no plant-specific income data which could be utilized to conduct an 'income approach' valuation of Bayer's industrial personal property." Appellant's Br. at p. 37. Because Bayer did not have plant-specific income data, the Tax Commissioner used Bayer's state corporate income tax returns to determine the total projected income for its

---

**20.** Insofar as Bayer has chosen to consolidate its assignments of error and supporting factual explanations concerning each of the three separate orders of the circuit court, we, likewise, jointly will consider such orders. For specific facts concerning the specific assessment errors complained of and addressed by these orders, see Sections I.A. & I.B., *supra*.

**21.** *See* note 7, *supra*.

**22.** " 'Physical deterioration' means a loss in value due to natural wear and tear of property resulting from age, use, abuse, etc." W. Va. C.S.R. § 110–1P–2.3.20.

**23.** "Functional obsolescence" is "[t]he loss of value due to factors such as excess capacity, changes in technology, flow of material, seasonal use, part-time use or other like factors. The inability to perform adequately the function for which an item was designed." W. Va.C.S.R. § 110–1P–2.3.8.

facilities, and attributed an income figure to each of the Bayer facilities in this case. Bayer complains that there is no authority permitting the Tax Commissioner to calculate income on this basis and that it was not a reliable indicator of Bayer's actual income.

In response to this argument, the Tax Commissioner replies that Bayer's own expert witness testified that the income approach is the most reliable method by which to calculate economic obsolescence. Thus, in order to use the income approach, the Tax Commissioner needed information regarding the income generated by Bayer's facilities; given Bayer's inability to provide that information, itself, the Tax Commissioner then referred to Bayer's corporate income tax returns in order to determine Bayer's income. Having done so, the Tax Commissioner states that Bayer is the only taxpayer whose property has been valued in this manner because it is the only industrial taxpayer that has challenged its tax assessments and has not provided the income data needed by the Tax Commissioner to render an assessment. Finally, the Tax Commissioner responds that, in using the income approach to value Bayer's industrial personal property, he determined that there was no economic obsolescence based upon inutility[24] and thus made no reduction for this type of depreciation. The Commission echoes the Tax Commissioner's arguments.

Bayer's third complaint regarding the appraisal of its industrial real property asserts that even if the income approach was a reliable method by which to appraise Bayer's industrial personal property, the Tax Commissioner erred by finding either a value for economic obsolescence less than that proposed by Bayer (for tax year 2006) or by concluding that there had been no economic obsolescence (in tax year 2007). In arriving at his final assessment values, Bayer states that the Tax Commissioner compared cost approach and income approach figures, both of which Bayer says were incorrect because neither accounted for economic obsolescence. Bayer claims that "[t]he Court has previously recognized that when different methods are available to quantify a particular result, they should all yield similar results; when they do not, averaging the different results does not remedy the error." Appellant's Br. at p. 40 (citing *In re Nat'l Bank of West Virginia at Wheeling,* 137 W.Va. 673, 688, 73 S.E.2d 655, 664 (1952) ("If either method is approximately correct, the other methods clearly are erroneous. Yet the sum total of the errors is reflected in the average of the three methods."), *overruled on other grounds by In re Kanawha Valley Bank,* 144 W.Va. 346, 109 S.E.2d 649 (1959)). The Tax Commissioner and the Commission reply that the Tax Commissioner is accorded discretion to choose the most accurate and reliable method of appraisal and to value property in accordance therewith. Insofar as the Tax Commissioner adhered to the governing regulations in appraising Bayer's industrial personal property for purposes of taxation, Bayer has failed to prove by clear and convincing evidence that such valuations were wrong.

Finally, with respect to the assessed value of Bayer CropScience's industrial real property for tax year 2006, Bayer complains that the Tax Commissioner overvalued its 450–acre parcel by approximately $5,900,000. To support its position, Bayer represents that the Tax Commissioner did not use any of the three enumerated valuation techniques applicable both to industrial real and personal property, but rather used a mass appraisal technique. Under this approach, Bayer states that each of the thirty-four parcels of land comprising its Bayer CropScience facility was classified as primary, waterfront, or secondary. The price per acre for each category of property was derived from a standardized real property valuation table and applied to all of the real property within each classification, which, when all of the property prices were added together, resulted in a total appraised value of $42,000 per acre, for a total of $18,900,000 for the entire 450–acre parcel. In this regard, Bayer complains that, because all of this property operates as a single site, the Tax Commissioner should have classified it as one type of property rather than as three different types of property. Had the property been classified as one type of property, Bayer suggests that its

---

24. *See supra* note 8.

appraised value would have been $29,000 per acre, for a total of $13,050,000 for the entire 450–acre parcel, or $5,850,000 less than the appraised value obtained by the Tax Commissioner. The Tax Commissioner replies that he referred to recent sales of three comparable properties in an effort to explain his valuation calculations; however, each of these sales were for much smaller parcels of land, *i.e.*, four- to ten-acre parcels, as compared to Bayer CropScience's site which consists of 450 acres. The Commission additionally reiterates that the Tax Commissioner is afforded discretion in making property appraisals, and Bayer has not proven that he abused his discretion.

 In this assignment of error, Bayer complains both of the appraisal methods employed by the Tax Commissioner and the assessments resulting therefrom. Recently, we reiterated the scope of the Tax Commissioner's authority to select methods of appraising property for taxation purposes and the nature of our review of such determinations:

"Title 110, Series 1P of the West Virginia Code of State Rules confers upon the State Tax Commissioner discretion in choosing and applying the most accurate method of appraising commercial and industrial properties. The exercise of such discretion will not be disturbed upon judicial review absent a showing of abuse of discretion." Syllabus point 5, *In re Tax Assessment Against American Bituminous Power Partners, L.P.*, 208 W.Va. 250, 539 S.E.2d 757 (2000).

Syl. pt. 7, *Foster*, 223 W.Va. 14, 672 S.E.2d 150. We also reviewed the deference accorded an assessor's tax assessment:

"As a general rule, there is a presumption that valuations for taxation purposes fixed by an assessor are correct.... The burden is on the taxpayer challenging the assessment to demonstrate by clear and convincing evidence that the tax assessment is erroneous." Syl. pt. 2, in part,

*Western Pocahontas Props., Ltd. v. County Comm'n of Wetzel County*, 189 W.Va. 322, 431 S.E.2d 661 [(1993)].

*Foster*, 223 W.Va. at 41, 672 S.E.2d at 177 (additional citations omitted).

Property taxes are required to be assessed in proportion to the value of the subject property. W. Va. Const. art. X, § 1 ("[A]ll property, both real and personal, shall be taxed in proportion to its value to be ascertained as directed by law."). For purposes of taxation, property is to be assessed "at its true and actual value." W. Va.Code § 11–3–1 (1977) (Repl.Vol.2008). Such value has variously been defined as "market value"[25] and "[t]he price paid for property in an arm's length transaction."[26]

The regulations delineating the method by which the Tax Commissioner determines the "true and actual value," W. Va.Code § 11–3–1, of industrial real and personal property are set forth in W. Va.C.S.R. §§ 110–1P–1, *et seq.* Here, Bayer complains of the Tax Commissioner's valuation of both its industrial personal property and its industrial real property. With respect to industrial personal property, W. Va.C.S.R. § 110–1P–2.5.3.1 (1991) instructs that, "[i]n determining an estimate of fair market value, three (3) approaches to fair value will be considered and used where applicable: (A) cost, (B) income, and (C) market [data]...."

Once generated, the various estimates of value will be considered in arriving at a final value estimate. However, of the three (3) approaches to value, the cost approach may be most consistently applied to machinery, equipment, furniture, fixtures, and leasehold improvements because of the availability of data. The market approach is used less frequently, principally due to a lack of meaningful sales. The income approach is not normally used because of the difficulty in estimating future net benefits to be derived except in the case of certain kinds of leased equipment.

---

**25.** Syl. pt. 3, in part, *Killen v. Logan County Comm'n*, 170 W.Va. 602, 295 S.E.2d 689 (1982), *overruled on other grounds by In re Tax Assessment of Foster Found.'s Woodlands Ret. Cmty.*, 223 W.Va. 14, 672 S.E.2d 150 (2008).

**26.** Syl. pt. 2, in part, *Kline v. McCloud*, 174 W.Va. 369, 326 S.E.2d 715 (1984).

When possible, an audit appraisal method should be used, but because of the difficulty in obtaining necessary accounting data from the taxpayer, or due to the lack of comparable commercial and/or industrial personal properties, a physical appraisal method may be necessary.

W. Va.C.S.R. § 110–1P–2.5.3.2. Finally, "[w]hen physically inspecting commercial and industrial personal property for appraisal, three (3) types of depreciation should be considered[:] physical deterioration, economic obsolescence and functional obsolescence." W. Va.C.S.R. § 110–1P–2.5.3.3. Finally, "frequently encountered commercial and industrial personal properties common to numerous businesses within a taxing district shall be valued using current appraisal guidelines furnished by the Tax Commissioner to local assessors." W. Va.C.S.R. § 110–1P–2.5.3.4.

Industrial real property is valued in a similar manner. Pursuant to W. Va.C.S.R. § 110–1P–2.2, "[g]enerally accepted appraisal methods used to establish the value of industrial and commercial real properties" are the cost approach, the income approach, and the market data approach. The "cost approach" is described as follows:

> To determine fair market value under this approach, replacement cost of the improvements is reduced by the amount of accrued depreciation and added to an estimated land value. In applying the cost approach, the Tax Commissioner will consider three (3) types of depreciation: physical deterioration, functional obsolescence, and economic obsolescence.

W. Va.C.S.R. § 110–1P–2.2.1.1. Next, the "income approach" is described as

> [a] property's present worth is directly related to its ability to produce an income over the life of the property. The selection of an overall capitalization rate will be derived from current available market data by dividing annual net income by the current selling price of comparable properties. The present fair market value of the property shall then be determined by dividing the annual economic rent by the capitalization rate.

W. Va.C.S.R. § 110–1P–2.2.1.2. Lastly, "[t]he market data approach will be applied by considering the selling prices of comparable properties." W. Va.C.S.R. § 110–1P–2.2.1.3. As with industrial personal property, with respect also to industrial real property,

> [o]nce generated, the various estimates of value may be considered in determining a final value estimate. However, the income approach is ordinarily inappropriate for franchised restaurants, governmental properties, hospitals, etc. In these cases, the cost and/or market approaches may be more suitable in estimating fair market value.
>
> When possible, the most accurate form of appraisal should be used, but because of the difficulty in obtaining the necessary data from the taxpayer, or due to the lack of comparable commercial and/or industrial properties, choice between the alternative appraisal methods may be limited.

W. Va.C.S.R. § 110–1P–2.2.2. Furthermore, the regulations instruct that industrial real property is to be classified into four distinct categories:

> For purposes of valuing active and residual industrial and commercial land in West Virginia, valuing sites shall be separated into four (4) broad categories: heavy industrial sites, light industrial or commercial sites, industrial parks, and mine sites. These sites shall be further classified when appropriate into active and residual portions. These classifications will be considered when applying and establishing the valuation method to the industrial and/or commercial properties.

W. Va.C.S.R. § 110–1P–2.2.3.

▮ To overcome the deference accorded to the appraisals performed by the Tax Commissioner and the assessments based thereon, a complaining taxpayer must prove by clear and convincing evidence that such valuations were wrong. Syl. pt. 5, *Foster*, 223 W.Va. 14, 672 S.E.2d 150. Upon our review of the records in these consolidated cases, we conclude that the circuit court did not err by upholding the challenged tax assessments because Bayer has not sustained its burden of proof. Bayer first complains that the Tax Commissioner should have calculated the

economic obsolescence [27] depreciation of its industrial personal property using the cost approach instead of the income approach. The regulations clearly state that the cost approach is the preferred method for valuing machinery and equipment, W. Va.C.S.R. § 110–1P–2.5.3.2, and the parties agree that the cost approach is the method by which the Tax Commissioner calculated depreciation attributable to functional obsolescence [28] and physical deterioration.[29] However, according to Bayer's own expert witness, the income approach is the most reliable method by which to calculate the third type of depreciation: economic obsolescence. In its order of June 28, 2006, the circuit court found as fact that Bayer MaterialScience's expert witness, "Mr. Svoboda[,] testified that economic obsolescence is best measured by the income approach[.]" Accordingly, the Tax Commissioner used the income approach to determine the amount of depreciation attributable to economic obsolescence. In doing so, the Tax Commissioner faithfully discharged his duty to "choos[e] and apply[ ] the most accurate method of appraising commercial and industrial properties." Syl. pt. 7, in part, *Foster*, 223 W.Va. 14, 672 S.E.2d 150. Therefore, the Tax Commissioner did not abuse his discretion by employing the most reliable methods in appraising Bayer's industrial personal property.

■ Bayer also argues that the Tax Commissioner's calculations of economic obsolescence depreciation were wrong because the amount of economic obsolescence calculated by the Tax Commissioner was much less than the amount of economic obsolescence calculated by Bayer. This discrepancy is undoubtedly due, in large part, to the fact that the Tax Commissioner had difficulty obtaining the necessary data upon which to make these calculations using the income approach. Bayer concedes that it did not have facility-specific income data available because that is not how its corporate financial structure operates. In the absence of this information directly from Bayer, then,

the Tax Commissioner consulted what he believed to be the next most reliable source of Bayer's income information: Bayer's corporate income tax returns that it had prepared, submitted, and verified as a true and accurate reporting of its income for those periods. The appraisal regulations specifically contemplate and make provision for cases such as this that involve "difficulty in obtaining the necessary data from the taxpayer." W. Va.C.S.R. § 110–1P–2.2.2. *Accord* W. Va.C.S.R. § 110–1P–2.5.3.2. In such cases, the Tax Commissioner is accorded discretion to use less reliable appraisal methods to derive his/her calculations in light of the taxpayer's inability or unwillingness to provide the needed information. Here, because Bayer was unable to provide the income data directly from its facilities, it was not unreasonable for the Tax Commissioner to rely on the income data that Bayer, itself, had supplied on its corporate income tax returns. Therefore, we do not find that the appraisals resulting from this alternative income information constituted an abuse of the Tax Commissioner's discretion.

■ Finally, Bayer complains that the Tax Commissioner overvalued its industrial real property and that he improperly classified it in several different categories even though Bayer CropScience uses the entirety of the property for its facility site. Again, however, the Tax Commissioner correctly followed the regulations governing the valuation of industrial real property. First, the Tax Commissioner explained that the appraised value of Bayer CropScience's industrial real property was commensurate with the prices for which other comparable parcels of industrial real property recently had sold. Reference to market prices in the appraisal of industrial real property is one of the enumerated methods by which to value such property: "The market data approach will be applied by considering the selling prices of comparable properties." W. Va.C.S.R. § 110–1P–2.2.1.3. Furthermore, the regula-

---

27. For the definition of "economic obsolescence," see *supra* note 7.

28. "Functional obsolescence" is defined in note 23, *supra*.

29. See note 22, *supra,* for the definition of "physical deterioration."

tions also direct that, "[f]or purposes of valuing active and residual industrial and commercial land in West Virginia, valuing sites shall be separated into four (4) broad categories . . . . These classifications will be considered when applying and establishing the valuation method to the industrial and/or commercial properties." W. Va.C.S.R. § 110–1P–2.2.3. Other than disagreeing with the appraised values the Tax Commissioner obtained by following the appraisal methods prescribed by these regulations, Bayer has not demonstrated by clear and convincing evidence that the Tax Commissioner's appraisal of Bayer CropScience's industrial real property was wrong. Therefore, we find no abuse of the Tax Commissioner's discretion in his industrial real property valuations.

Having found no abuse of the Tax Commissioner's discretion in rendering the appraisals complained of herein, we affirm the circuit court's orders affirming the Tax Commissioner's appraisals and the assessments resulting therefrom.

## IV.

### CONCLUSION

For the foregoing reasons, the June 28, 2006, October 2, 2007, and October 23, 2007, orders of the Circuit Court of Kanawha County are hereby affirmed.

Affirmed.

Justice ALBRIGHT not participating.

Senior Status Justice McHUGH, sitting by temporary assignment.

Senior Status Justice McHUGH disqualified.

Judge BEANE, sitting by temporary assignment.

Justice BENJAMIN dissents and reserves the right to file a dissenting opinion.

BENJAMIN, J., dissenting.

(Filed January 9, 2009)

For the reasons set forth in my dissenting opinion in *In re: Tax Assessment of Foster Foundation's Woodlands Retirement*, No. 33891, I respectfully also dissent in this case.

I believe that the proper burden of proof for a taxpayer in a case such as this is that the taxpayer meet a "preponderancy of the evidence" burden. I therefore dissent to the majority opinion.