IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2025 Term

_____

No. 22-789

_____

FILED

**March 21, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

DANNY WEBB AND
DANNY WEBB CONSTRUCTION COMPANY, INC.,
Defendants Below, Petitioners,

V.

NORTH HILLS GROUP, INC.,
Plaintiff Below, Respondent.

_____

Appeal from the Circuit Court of Fayette County
The Honorable Paul M. Blake, Jr., Judge
Civil Action No. 19-C-2

REVERSED AND REMANDED

_____

Submitted: January 15, 2025
Filed: March 21, 2025

J. Zak Ritchie, Esq.
Michael B. Hissam, Esq.
Andrew C. Robey, Esq.
Hissam Forman Donovan Ritchie PLLC
Charleston, West Virginia
Attorneys for the Petitioners

Kevin W. Thompson, Esq.
David R. Barney, Jr., Esq.
Thompson Barney
Charleston, West Virginia
Attorneys for the Respondent

JUSTICE BUNN delivered the Opinion of the Court.

CHIEF JUSTICE WOOTON, deeming himself disqualified, did not participate in the decision of this case.

JUDGE MICHAEL D. LORENSEN sitting by temporary assignment.

**SYLLABUS BY THE COURT**

1. "One may appeal to this Court a circuit court's order granting a new trial and one may appeal such an order without waiting for the new trial to be had." Syllabus point 6, in part, *Foster v. Sakhai*, 210 W. Va. 716, 559 S.E.2d 53 (2001).

2. "The Intermediate Court of Appeals of West Virginia generally does not have appellate jurisdiction over interlocutory appeals. W. Va. Code § 51-11-4(d)(8)." Syllabus point 6, *Aaron W. v. Evelyn W.*, 251 W. Va. 1, 909 S.E.2d 36 (2024).

3. Pursuant to West Virginia Code § 51-11-4(d)(8), the Intermediate Court of Appeals of West Virginia does not have jurisdiction over an interlocutory appeal of a circuit court order granting a new trial.

4. "It is the peculiar and exclusive province of the jury to weigh the evidence and resolve questions of fact when the testimony of witnesses is conflicting or when the facts, though undisputed, are such that reasonable men may draw different conclusions from them." Syllabus point 2, *Koontz v. Long*, 181 W. Va. 800, 384 S.E.2d 837 (1989) (per curiam) (quoting Syllabus point 1, *Evans v. Farmer*, 148 W. Va. 142, 133 S.E.2d 710 (1963)).

i

5. "Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syllabus point 1, *Foster v. Sakhai*, 210 W. Va. 716, 559 S.E.2d 53 (2001) (quoting Syllabus point 4, *Sanders v. Georgia-Pacific Corp.*, 159 W. Va. 621, 225 S.E.2d 218 (1976)).

6. "As a species of quasi contract relief, unjust enrichment does not exist to provide an alternative means of recovery for breach of contract, nor does it exist to reduce contract disputes to a question of whether one party benefitted from the other party's performance." Syllabus point 3, *Gulfport Energy Corp. v. Harbert Private Equity Partners, LP*, 244 W. Va. 154, 851 S.E.2d 817 (2020).

7. "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." Syllabus point 2, *Gulfport Energy Corp. v. Harbert Private Equity Partners, LP*, 244 W. Va. 154, 851 S.E.2d 817 (2020).

8. "Where the trial court improperly sets aside a verdict of a jury, such verdict will be reinstated by this Court and judgment rendered thereon." Syllabus point 1,

*Maynard v. Adkins*, 193 W. Va. 456, 457 S.E.2d 133 (1995) (quoting Syllabus point 4,

*Bronson v. Riffe*, 148 W. Va. 362, 135 S.E.2d 244 (1964)).

**BUNN, Justice:**

Petitioners Danny Webb ("Mr. Webb")[1] and Danny Webb Construction Company, Inc. ("Webb Construction" or "Webb") (collectively "Webb petitioners"), appeal a Fayette County Circuit Court order that set aside a jury verdict in Webb petitioners' favor and awarded respondent, North Hills Group, Inc. ("North Hills"),[2] a new trial. Webb petitioners argue that the circuit court erred because sufficient evidence supported the verdict as to North Hills' tort claims, and because the parties' written lease agreement precludes North Hills' claim for unjust enrichment.[3] We agree and therefore reverse the circuit court's order and remand this case with instructions to reinstate the jury's verdict in favor of Webb petitioners and to enter judgment in accordance with the verdict.

---

[1] According to Webb's brief, Mr. Webb owned Webb Construction during the timeframe relevant to this case but sold his ownership interest in May 2018. He continues to defend the company pursuant to an indemnity agreement.

[2] The president of North Hills, Patricia Hamilton, testified at trial that North Hills is a small West Virginia corporation formed by five individuals in the 1970s to promote economic and land development in Fayette County, West Virginia. The current North Hills' shareholders are heirs of the five original founders. *See also Webb v. N. Hills Grp., Inc.* (*Webb-I*), No. 16-0640, 2017 WL 2493768, at *1 (W. Va. June 9, 2017) (memorandum decision).

[3] Webb petitioners additionally contend that the circuit court erred by granting a new trial because res judicata, the statute of limitations, and the gist of the action doctrine each bar North Hills' lawsuit, and because the parties' written lease agreement precludes North Hills' claim for breach of fiduciary duty. We find Webb petitioners' sufficiency of the evidence and unjust enrichment assignments of error are dispositive and do not address the remaining assignments of error.

# I.

## FACTUAL AND PROCEDURAL HISTORY

In 2001, North Hills conveyed a 4.76 acre parcel of land in Fayette County, West Virginia ("the Webb parcel"), to Webb Construction, including all right, title, and interest to and in an unplugged and unproductive gas well located on the Webb parcel, Well 460. Webb obtained an underground injection control ("UIC") permit from the West Virginia Department of Environmental Protection ("DEP"), converted Well 460 into an UIC well,[4] and used it to store and dispose of wastewater generated from off-site oil and gas hydraulic fracturing operations ("fracking waste").[5] Webb Construction also placed aboveground storage tanks on the parcel.

---

[4] Underground injection control wells, also referred to as UIC wells, are "regulated through the Underground Injection Control Program" administered by the West Virginia Department of Environmental Protection, Division of Water Resources. *Webb-I*, 2017 WL 2493768, at *2 n.3. *See also* W. Va. C.S.R. §§ 47-13-1 to -14 (detailing criteria and standards applicable to the West Virginia Underground Injection Control Program).

[5] "Fracking, or hydrofracking [alternate terms for hydraulic fracturing], is a method of stimulating production of a well by pumping [into it] large quantities of water and fracturing chemicals and fluids at high volume and pressure." *Webb* at *3 n.4 (citing 8 Howard R. Williams & Charles J. Meyers, *Oil and Gas Law* 406 (2016)). "[A] portion of the fluid flows back up the wellbore to the surface . . . ." *Hydraulic Fracturing Law & Practice* § 1.02 (LexisNexis Matthew Bender, 2023 ed.). "The flowback water and, once the well starts producing, the produced water . . . can be reused in multiple operations . . . ." *Id.* § 2.06[1][b]. "[A]fter multiple uses, [the wastewater] can be disposed of through disposal wells." *Id.*

North Hills owns a tract of approximately 3,624 acres ("the North Hills tract") adjacent to the Webb parcel. Another gas well, known as Well 508, is located on the North Hills tract. In 2008, North Hills and Webb Construction executed an oil and gas lease that granted Webb Construction the right to conduct certain oil and gas related operations on the North Hills tract. Webb made an initial payment of $72,480.00 for the lease, which included a provision granting Webb Construction "the right to inject salt water or brine in any . . . wells drilled or located upon the leased premises which prove unproductive" in exchange for an annual payment of $3,624.00. Webb considered Well 508 to be unproductive, obtained a UIC permit from DEP, and converted it into a UIC well for storing and disposing of fracking waste. At some point after executing the lease, Webb installed pipelines running from its operations on the Webb parcel to Well 508, which it used to pump fluids from its storage tanks on the Webb parcel to Well 508 for injection into the well. Beginning in 2012, Webb Construction paid North Hills the $3,624.00 annual fee for the privilege of injecting Well 508. Webb submitted its final payment in 2015.

In April 2015, Ms. Patricia Hamilton, the heir of an original founder of North Hills, learned that Webb Construction was operating Well 508 as an underground injection control well.[6] That same month, North Hills' shareholders elected Ms. Hamilton president

---

[6] According to her trial testimony, Ms. Hamilton had no involvement in North Hills until her mother died in December 2012, thus, she did not participate in conveying the Webb parcel or executing the oil and gas lease with Webb Construction.

3

of North Hills' Board of Directors. At that shareholders' meeting, Ms. Hamilton shared what she had learned about Webb Construction's activities at Well 508. Thereafter, North Hills' Board held a special meeting where they voted to terminate Webb Construction's lease. North Hills notified Webb Construction of the lease's termination by letter dated July 24, 2015. The letter explained that North Hills terminated the lease because Webb Construction failed to pursue oil and gas development in accordance with the lease's purpose. North Hills further stated that it had "credible information" that Webb Construction also violated the lease by injecting Well 508 with fluids of a nature "clearly not contemplated" in the lease, which allowed Webb to inject only salt water, brine, or natural gas. Accordingly, North Hills instructed Webb Construction that, within a reasonable time, it "must remove all [of its] equipment, take all other steps necessary to reclaim the land, and shut down the well in accordance with all requirements of state and federal regulators." North Hills enclosed a check refunding Webb's $3,624.00 injection payment for 2015.

Webb Construction did not cease its operations, and, in January 2016, North Hills petitioned the Circuit Court of Fayette County for declaratory and injunctive relief, naming Webb petitioners as respondents. North Hills asked the circuit court to declare the oil and gas lease terminated and grant an injunction requiring Webb petitioners to cease and desist any further activities on the North Hills tract. Following two days of hearings, the circuit court concluded that Webb petitioners breached the oil and gas lease by

4

commencing underground injection activities in Well 508 without first exploring the well for oil and gas and by injecting Well 508 with substances not authorized by the lease. In an order dated June 7, 2016, the circuit court (1) declared that North Hills terminated the oil and gas lease by its July 24, 2015 letter; (2) granted the requested injunction against Webb petitioners, directing them to "cease and desist any further activities on [the North Hills tract] due to the termination of the subject lease;" and (3) found sufficient evidence to pierce the corporate veil and hold Webb petitioners jointly and severally liable for North Hills' damages.

Webb petitioners appealed the circuit court's decision to this Court. *See Webb v. N. Hills Grp., Inc.* (*Webb-I*), No. 16-0640, 2017 WL 2493768 (W. Va. June 9, 2017) (memorandum decision). We affirmed the circuit court's order in part, on different grounds, and reversed in part. Instead of adopting the circuit court's finding that North Hills terminated the lease, we relied on specific provisions in the lease to affirm, concluding that the "Oil and Gas Lease terminated of its own accord at the conclusion of the secondary term of the lease." *Id*. at *6. We also affirmed the circuit court's decision to grant the injunction. However, we reversed the circuit court, in part, because there was insufficient evidence in the record to pierce the corporate veil.

Around 2019, Charles Flint, who had served as vice president and then treasurer of North Hills, visited the North Hills tract for the first time after Webb

5

Construction's 2016 departure, and purportedly found numerous leaks in the pipeline. On January 7, 2019, North Hills filed the suit underlying this appeal, asserting claims against Webb petitioners for negligence, trespass, nuisance, unjust enrichment, and breach of fiduciary duty, alleging that Webb Construction's injection of fracking waste into Well 508 and the pipeline it constructed to pump the fluid from the Webb parcel to Well 508 contaminated the North Hills tract.

During the jury trial, North Hills called eight witnesses to testify, including Mr. Webb. Webb petitioners presented their defense by cross-examining North Hills' witnesses and did not call any of their own witnesses. At the close of North Hills' case, Webb petitioners moved for judgment as a matter of law, arguing, in relevant part, that res judicata, the statute of limitations, and the gist of the action doctrine barred North Hills' claims. Webb petitioners also sought dismissal of North Hills' breach of fiduciary duty claim based on North Hills' failure to produce evidence of a fiduciary relationship, and North Hills' unjust enrichment claim, contending that the quasi-contract claim was barred by the parties' oil and gas lease. The circuit court denied Webb petitioners' motions and submitted the case to the jury, which returned its verdict in favor of Webb petitioners on all five of North Hills' claims. North Hills filed motions to set aside the verdict and for a new trial. *See* W. Va. R. Civ. P. 59 (addressing motions for a new trial). On September 16, 2022, the circuit court granted North Hills' motions and ordered a new trial. Webb

6

petitioners appeal, arguing that the circuit court abused its discretion by granting North Hills' motions.

## II.

## JURISDICTION AND STANDARD OF REVIEW

Webb petitioners seek review of the circuit court's interlocutory order granting a new trial. Before addressing the merits of this case, we first evaluate our jurisdiction to consider the appeal of such an order. Next, we set out the applicable standard of review.

### A. Jurisdiction

Appellate courts, in general, do not have jurisdiction to review interlocutory orders. *See Credit Acceptance Corp. v. Front*, 231 W. Va. 518, 522, 745 S.E.2d 556, 560 (2013) ("Typically, interlocutory orders are not subject to this Court's appellate jurisdiction.").[7] This is because "[t]he usual prerequisite for . . . appellate jurisdiction is a final judgment[.]" *Coleman v. Sopher*, 194 W. Va. 90, 94, 459 S.E.2d 367, 371 (1995). A

---

[7] We sometimes refer to our jurisdiction to consider an order as its "appealability." *See Parsons v. Consol. Gas Supply Corp.*, 163 W. Va. 464, 470, 256 S.E.2d 758, 761 (1979) (commenting, in context of an appeal from a default judgment, that the Court has "recognized that appealability was a jurisdictional issue" (citing *Parsons v. McCoy*, 157 W. Va. 183, 202 S.E.2d 632 (1973))); *Delardas v. Morgantown Water Comm'n*, 148 W. Va. 318, 320, 134 S.E.2d 889, 890 (1964) (observing that whether an order is appealable is "[a] preliminary question involving the jurisdiction of this Court").

final judgment or order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Durm v. Heck's, Inc.*, 184 W. Va. 562, 566, 401 S.E.2d 908, 912 (1991) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S. Ct. 631, 633, 89 L. Ed. 911 (1945)). The requirement for a final judgment, known as the "rule of finality," serves "to prohibit 'piecemeal appellate review of trial court decisions which do not terminate the litigation[.]'" *Coleman*, 194 W. Va. at 95 n.3, 459 S.E.2d at 372 n.3 (quoting *James M.B. v. Carolyn M.*, 193 W. Va. 289, 292, 456 S.E.2d 16, 19 (1995)).

While interlocutory orders do not end litigation and technically violate the rule of finality,[8] this Court has long exercised jurisdiction over interlocutory orders that fall within certain narrow exceptions to the rule. *See Credit Acceptance*, 231 W. Va. at 523, 745 S.E.2d at 561 (identifying various exceptions to the rule of finality). Prior to 1998, statutory authority for this Court's jurisdiction to review an interlocutory order granting a new trial plainly stated:

> A party to a controversy in any circuit court may obtain from the supreme court of appeals, or a judge thereof in vacation, an appeal from, or a writ of error or supersedeas to, a judgment, decree or order of such circuit court in the following cases: . . .
>
> (i) In any civil case where there is an order granting a new trial or rehearing, and in such cases an appeal may be

---

[8] *See* 4 Am. Jur. 2d *Appellate Review* § 77 (2018) ("An 'interlocutory order or decree' is one which does not finally determine a cause of action but only decides some intervening matter pertaining to the cause, and which requires further steps to be taken in order to adjudicate the cause on the merits.").

taken from the order without waiting for the new trial or rehearing to be had[.]

W. Va. Code § 58-5-1 (eff. 1925) (amended 1998). However, in 1998 the Legislature rewrote § 58-5-1, removing the designated list of judgments, decrees, or orders subject to this Court's jurisdiction and stating, in relevant part,

> A party to a civil action may appeal to the Supreme Court of Appeals from a final judgment of any circuit court or from an order of any circuit court constituting a final judgment as to one or more but fewer than all claims or parties upon an express determination by the circuit court that there is no just reason for delay and upon an express direction for the entry of judgment as to such claims or parties.

W. Va. Code § 58-5-1 (amended 2021).[9]

In *Foster v. Sakhai*, 210 W. Va. 716, 559 S.E.2d 53 (2001), the Court considered the impact of this change on its jurisdiction to review a circuit court order granting a new trial. The *Foster* Court examined the logic of allowing an appeal from an order granting a new trial in relation to the Court's constitutional authority and inherent powers, and also considered the Legislature's intent. 210 W. Va. at 723-27, 559 S.E.2d at 60-64. Based on this analysis, the *Foster* Court concluded that the 1998 revised version of West Virginia Code § 58-5-1 does not foreclose the Court "from hearing the appeal of an order granting a new trial." *Id.* at 727, 559 S.E.2d at 64. Thus, the Court affirmed its

_____

[9] The quoted language appears verbatim in paragraph (a) of the 2021 amended version of West Virginia Code § 58-5-1.

9

jurisdiction to consider this type of interlocutory appeal, holding that "[o]ne may appeal to this Court a circuit court's order granting a new trial and one may appeal such an order without waiting for the new trial to be had." Syl. pt. 6, in part, *id*.[10] Although the *Foster* Court clearly established this Court's appellate jurisdiction over an interlocutory order granting a new trial, we have not reconsidered this specific issue since the Legislature created the Intermediate Court of Appeals of West Virginia and granted it appellate authority over certain types of cases. We do so now.

The Legislature set out the ICA's limited jurisdiction in West Virginia Code § 51-11-4, which includes a paragraph that deprives the ICA of jurisdiction over eleven matters for which this Court exercises exclusive jurisdiction. *See id.* § 51-11-4(d). This list includes interlocutory appeals. *See id.* § 51-11-4(d)(8).[11] Accordingly, we recently

---

[10] *Accord* Syl. pt. 4, *Smith v. Andreini*, 223 W. Va. 605, 678 S.E.2d 858 (2009); *see also* Syl. pt. 5, *Wolfe v. Welton*, 210 W. Va. 563, 558 S.E.2d 363 (2001) ("A party to a controversy in any circuit court may obtain from this Court an appeal in any civil case when there is an order granting a new trial and such appeal may be taken from the order without waiting for the new trial to be held." (quoting Syl. pt. 1, *Hundley v. Martinez,* 151 W. Va. 977, 158 S.E.2d 159 (1967))). Syllabus point 6 of *Foster v. Sakhai*, 210 W. Va. 716, 559 S.E.2d 53 (2001), additionally states, in part, that "To the extent that our previous cases such as *James M.B. v. Carolyn M.*, 193 W. Va. 289, 456 S.E.2d 16 (1995), *Coleman v. Sopher*, 201 W. Va. 588, 499 S.E.2d 592 (1997), and their progeny suggest otherwise, they are hereby distinguished."

[11] *But see* W. Va. Code § 48-9-203(f) (granting the ICA appellate jurisdiction over interlocutory appeals of temporary custodial allocations under certain circumstances); *Aaron W. v. Evelyn W.*, 251 W. Va. 1, ___, 909 S.E.2d 36, 42 (2024) (acknowledging the ICA's "limited appellate jurisdiction over certain temporary child custodial allocation orders" provided by W. Va. Code § 48-9-203(f)).

announced that "The Intermediate Court of Appeals of West Virginia generally does not have appellate jurisdiction over interlocutory appeals. W. Va. Code § 51-11-4(d)(8)." Syl. pt. 6, *Aaron W. v. Evelyn W*., 251 W. Va. 1, 909 S.E.2d 36 (2024). Elaborating on this general holding, we now specifically hold that, pursuant to West Virginia Code § 51-11-4(d)(8), the Intermediate Court of Appeals of West Virginia does not have jurisdiction over an interlocutory appeal of a circuit court order granting a new trial. Hence, jurisdiction over the instant interlocutory appeal properly lies in this Court.

### B. Standard of Review

We apply a three-part standard when reviewing a circuit court's decision on a motion for a new trial.

> This Court reviews the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. pt. 1, *Burke-Parsons-Bowlby Corp. v. Rice*, 230 W. Va. 105, 736 S.E.2d 338 (2012), *superseded by statute*, W. Va. Code § 55-7E-3, *on other grounds as recognized in Martinez v. Asplundh Tree Expert Co*., 239 W. Va. 612, 617, 803 S.E.2d 582, 587 (2017). *See also Tennant v. Marion Health Care Found., Inc*., 194 W. Va. 97, 104, 459 S.E.2d 374, 381 (1995) (applying this standard to review of order granting a new trial).

11

We have further established that,

> When a trial judge vacates a jury verdict and awards a new trial pursuant to Rule 59 of the *West Virginia Rules of Civil Procedure*, the trial judge has the authority to weigh the evidence and consider the credibility of the witnesses. If the trial judge finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, the trial judge may set aside the verdict, even if supported by substantial evidence, and grant a new trial. A trial judge's decision to award a new trial is not subject to appellate review unless the trial judge abuses his or her discretion.

Syl. pt. 3, in part, *In re State Pub. Bldg. Asbestos Litig.* ("*Asbestos Litig.*"), 193 W. Va. 119, 454 S.E.2d 413 (1994).[12]

---

[12] A different standard applies when this Court reviews a circuit court order *denying* a motion for a new trial. *See* Syl. pt. 3, *Walker v. Monongahela Power Co.*, 147 W. Va. 825, 131 S.E.2d 736 (1963) (addressing denial of motion for new trial and holding that "[i]n determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true."). We previously emphasized the difference between our review of orders *granting* a new trial and orders *denying* a new trial after observing the Court had "drifted . . . from the proper standard of review" and erroneously applied *Walker* when considering an order *granting* a new trial. *In re State Pub. Bldg. Asbestos Litig.* ("*Asbestos Litig.*"), 193 W. Va. 119, 126, 454 S.E.2d 413, 420 (1994). S*ee also id.* at 125 n.3, 454 S.E.2d at 419 n.3 (clarifying *Walker's* application only to trial court decisions *denying* a new trial); *e.g., McNeely v. Frich*, 187 W. Va. 26, 415 S.E.2d 267 (1992) (per curiam) (improperly applying *Walker* when considering an order *granting* a new trial). We raise this concern again because, despite the Court's prior effort to resolve the misapplication of *Walker*, decisions by this Court issued after *Asbestos Litigation* have continued to misstate the standard of review applicable to our review of orders granting or denying a new trial. *See, e.g.*, *Hamilton v. Ryu*, No. 16-0856, 2017 WL 4711421, at *2 (W. Va. Oct. 20, 2017) (memorandum decision) (quoting both *Walker* and *Asbestos Litigation* in relation to appeal of order *denying* motion for new trial); *Harnish v. Corra*, 237 W. Va. 609, 788 S.E.2d 750 (2016) (applying *Walker* and *Asbestos Litigation* to appeal of order *granting* motion for new trial); *Faris v. Harry Green*

## III.

## DISCUSSION

We begin our analysis of this case by acknowledging the fundamental premise that, with few constraints, civil litigants have an absolute right to a jury trial. *See* U.S. Const. amend. VII (preserving the right of trial by jury); W. Va. Const. art. III, § 13 (establishing the right of jury trial); W. Va. R. Civ. P. 38(a) ("The right of trial by jury as declared by the Constitution or statutes of the State shall be preserved to the parties inviolate."); *Stephenson v. Ashburn*, 137 W. Va. 141, 145, 70 S.E.2d 585, 587 (1952) ("The language of the constitution is mandatory and the right [of trial by jury] itself is fundamental." (quoting *Matheny v. Greider*, 115 W. Va. 763, 764, 177 S.E. 769, 769 (1934))). As explained by Justice Antonin Scalia, the right to a jury trial is "no mere procedural formality, but a fundamental reservation of power in our constitutional structure. Just as suffrage ensures the people's ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary." *Blakely v. Washington*, 542 U.S. 296, 306, 124 S. Ct. 2531, 2538-39, 159 L. Ed. 2d 403 (2004). *See*

*Chevrolet, Inc.*, 212 W. Va. 386, 572 S.E.2d 909 (2002) (per curiam) (reviewing order *denying* motion for new trial and applying *Walker* and *Asbestos Litigation*); *Summers v. Martin*, 199 W. Va. 565, 567-68, 486 S.E.2d 305, 307-08 (1997) (per curiam) (considering a trial court's order *granting* a new trial and quoting both *Walker* and *Asbestos Litigation*). Still other cases have improperly applied a standard very similar to *Walker* that was announced in Syllabus point 5 of *Orr v. Crowder*, 173 W. Va. 335, 315 S.E.2d 593 (1983) (addressing denial of judgment as a matter of law). *See, e.g.*, *Neely v. Belk Inc.*, 222 W. Va. 560, 668 S.E.2d 189 (2008) (improperly applying *Orr* when considering an order *granting* a new trial); *Grimmett v. Smith*, 238 W. Va. 54, 792 S.E.2d 65 (2016) (same). Both parties to this appeal likewise cited an inapplicable standard of review.

13

*also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 343, 99 S. Ct. 645, 657-58, 58 L. Ed. 2d 552 (1979) (Rehnquist, J., dissenting) ("The founders of our Nation considered the right of trial by jury in civil cases an important bulwark against tyranny and corruption, a safeguard too precious to be left to the whim of the sovereign, or, it might be added, to that of the judiciary.").

Coextensive with the right to trial by jury is the right to have that jury actually determine material questions of fact. *See Ford Motor Co. v. Darling's*, 86 A.3d 35, 47 (Me. 2014) ("The right to a trial by jury is 'the right to have a determination made by the jury on material questions of fact.'" (quoting *Smith v. Hawthorne*, 892 A.2d 433, 438 (Me. 2006))). Therefore, "[i]t is the peculiar and exclusive province of the jury to weigh the evidence and resolve questions of fact when the testimony of witnesses is conflicting or when the facts, though undisputed, are such that reasonable men may draw different conclusions from them." Syl. pt. 2, *Koontz v. Long*, 181 W. Va. 800, 384 S.E.2d 837 (1989) (per curiam) (quoting Syl. pt. 1, *Evans v. Farmer*, 148 W. Va. 142, 133 S.E.2d 710 (1963)). Naturally then, as the "trier of fact," a jury is "uniquely situated" to make credibility determinations. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). *See also Jane Doe-1 v. Corp. of President of The Church of Jesus Christ of Latter-day Saints*, 239 W. Va. 428, 450, 801 S.E.2d 443, 465 (2017) (acknowledging the jury's responsibility to "to assess the credibility of witnesses"); *Gomez v. Kanawha Cnty.*

14

*Comm'n*, 237 W. Va. 451, 471 n.85, 787 S.E.2d 904, 924 n.85 (2016) ("The weight to be given to the testimony and the credibility of the witness is for the jury.").

The jury also has the prerogative to reject evidence it finds incredible, including all or part of a witness's testimony. *See N.L.R.B. v. Pittsburgh S.S. Co.*, 337 U.S. 656, 659, 69 S. Ct. 1283, 1285, 93 L. Ed. 1602 (1949) ("[I]n the determination of litigated facts, the testimony of one who has been found unreliable as to one issue may properly be accorded little weight as to the next."); *Quintana-Ruiz v. Hyundai Motor Corp.*, 303 F.3d 62, 75-76 (1st Cir. 2002) ("[A] jury may not reject testimony that is uncontradicted and unimpeached (directly, circumstantially, or inferentially) unless credibility is at issue," but juries "may reject uncontradicted, unimpeached testimony when it is improbable, inherently contradictory, riddled with omissions, or delivered in a manner giving rise to doubts.").[13] To this end, "[t]he jury is sacrosanct in our legal system, and we have a duty to protect its constitutional role[.]" *Palin v. New York Times Co.*, 113 F.4th 245, 255 (2d

---

[13] *See also Snead v. Fla. Agric. & Mech. Univ. Bd. of Trs.*, 724 F. App'x 842, 848 (11th Cir. 2018) ("A reasonable jury could have heard [witness's] implausible testimony . . . and chosen to disregard the rest of what he said, too."); *Whitehead v. Bond*, 680 F.3d 919, 926 (7th Cir. 2012) (acknowledging that "juries may reject parts of a witness's testimony while accepting other [parts]" (quoting *United States v. Colston*, 936 F.2d 312, 315 (7th Cir. 1991))); *Powers v. Bayliner Marine Corp.*, 83 F.3d 789, 797 (6th Cir. 1996) (finding trial court did not err by instructing jury it was "not required to accept testimony even though the testimony is uncontradicted and the witness is not impeached"); *Liberty Mut. Ins. Co. v. Thompson*, 171 F.2d 723, 726 (5th Cir. 1948) (explaining that a jury may reject a witness's testimony "if the jury believes that such witness has willfully and corruptly sworn falsely to any material fact").

Cir. 2024). *See also Blitzer v. Breski*, 303 A.3d 88, 102 (Md. App. Ct.) ("[I]n deciding whether to grant a new trial . . . a court must act in deference to the jury's verdict because '"the jury is sacrosanct[,] and its importance is unquestioned."'" (quoting *John Crane, Inc. v. Puller*, 899 A.2d 879, 908 (Md. Ct. Spec. App. 2006))), *cert. denied*, 306 A.3d 648 (Md. 2023).

Given the significant and exclusive functions of a jury to weigh evidence and resolve factual questions, we have determined that "a new trial should rarely be granted and then granted only where it is '"reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done."'" *Neely v. Belk Inc*., 222 W. Va. 560, 566, 668 S.E.2d 189, 195 (2008) (quoting *Asbestos Litig.*, 193 W. Va. at 124, 454 S.E.2d at 418). With these principles in mind, we evaluate the circuit court's decision to grant a new trial to North Hills, the party with the burden of proof in this case, despite the jury's unanimous verdict in favor of the defendant, Webb Construction, and with no allegation of prejudicial trial error. For the reasons set forth below, first addressing North Hills' tort claims and then its unjust enrichment claim, we find that the circuit court abused its discretion in setting aside the jury's verdict and granting the plaintiff a new trial.

### A. North Hills' Tort Claims

The circuit court found that the jury's verdict could not stand because this Court's decision in *Webb-I* was determinative of North Hills' tort claims, and Webb

16

petitioners did not contradict or rebut the evidence or testimony presented by North Hills. Focusing on evidence related to Webb Construction's violation of its lease agreement with North Hills rather than evidence pertaining to North Hills' tort claims, the circuit court further ruled that that the "verdict was plainly contrary to the clear weight of the evidence and without sufficient evidence to support it," and "a miscarriage of justice would result if the verdict [was] allowed to stand." Accordingly, the court granted North Hills' motions to set aside the verdict and for a new trial.[14]

Webb petitioners argue that the circuit court abused its discretion by granting North Hills a new trial because sufficient evidence supported the jury's defense verdict finding that North Hills did not bear its burden to prove that Webb Construction committed the alleged torts. According to Webb petitioners, North Hills failed to establish that it suffered injury to the North Hills tract from contamination emanating from the Well 508 injection site or the abandoned pipeline that formerly connected Well 508 to the Webb parcel. North Hills counters by relying on the circuit court's general finding that North

---

[14] The circuit court's order identifies various items of evidence, such as deeds, the 2008 lease, a DEP Notice of Violation issued to Webb in 2008 for injecting without a permit (which was abated), a DEP Consent Order with Webb addressing the same 2008 violation and how Webb would remedy it, injection gas well testing data purportedly indicating that Well 508 was a productive well, and Webb's injection permit information with associated analytical data. These documents relate to Webb's breach of its lease with North Hills by injecting substances into Well 508 that the lease did not authorize. But the circuit court failed to explain how they prove that North Hills suffered an injury, which is an essential element of North Hills' tort claims.

Hills adduced "substantial evidence" indicating that Webb petitioners "caused contamination" on the North Hills tract, and claims its evidence was neither contradicted nor rebutted by Webb petitioners. North Hills asserts that Webb petitioners injected "unknown" amounts of substances "from unknown sources into the 508 well," without keeping records on the identity or sources of the substances.[15]

1. *Webb-I* **Decision.** In setting aside the jury's verdict and granting North Hills a new trial, the circuit court relied heavily on our decision in *Webb-I*. Even though *Webb-I* was a declaratory judgment and injunction action based in contract, the circuit court still quoted several paragraphs from the Court's memorandum decision that address Webb Construction's breach of its lease with North Hills.[16] In relating its conclusions of law, the circuit court stated that "the aforementioned findings in the [*Webb-I*] decision are determinative on Plaintiff's claims for trespass, nuisance, negligence, unjust enrichment and breach of fiduciary duty. These findings by the West Virginia Supreme Court of Appeals *establish the elements for each of Plaintiff's claims* against the Defendants." (Emphasis added).

---

[15] North Hills does not provide any authority requiring Webb petitioners to maintain such records.

[16] The quoted paragraphs from *Webb-I* include the Court's finding that the lease permitted Webb Construction to inject only salt water or brine into Well 508 and the Court's conclusion that the record in *Webb-I* clearly established Webb Construction's injection of fluids other than salt brine into the well.

18

To the contrary, *Webb-I* does not even discuss, much less resolve, any issue pertaining to whether Webb petitioners committed any tort by allegedly contaminating the North Hills tract. Rather, the *Webb-I* Court considered the circuit court's entry of a declaratory judgment and issuance of a stay. In *Webb-I,* North Hills sought no monetary damages and claimed no injury resulting from the breach of contract. Absent other evidence supporting North Hills' tort claims, which we discuss below, the lower court's misapprehension of both tort law and the impact of our decision in *Webb-I* warrants reversal pursuant to our holding that,

> [a]lthough the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.

Syl. pt. 1, *Foster*, 210 W. Va. 716, 559 S.E.2d 53 (quoting Syl. pt. 4, *Sanders v. Georgia Pacific Corp.*, 159 W. Va. 621, 225 S.E.2d 218 (1976)). *Accord* Syl. pt. 6, *Smith v. Andreini*, 223 W. Va. 605, 678 S.E.2d 858 (2009).

**2. Weight of the Evidence.** As the plaintiff in the underlying action, North Hills had the burden to prove its claims. "It is a well-established rule of law that in civil actions the party seeking relief must prove [its] right thereto[.]" *Boury v. Hamm*, 156 W. Va. 44, 52, 190 S.E.2d 13, 18 (1972).[17] We have previously explained that,

---

[17] *See* also *Bayer MaterialScience, LLC v. State Tax Comm'r*, 223 W. Va. 38, 49, 672 S.E.2d 174, 185 (2008) (per curiam) ("We have repeatedly recognized . . . that

19

> [a]s a general matter, the burden of proof consists of two components: burden of production and burden of persuasion. The burden of persuasion requires the party upon whom it is placed[] to convince the trier of fact . . . on a given issue. When a party has the burden of persuasion on an issue, that burden does not shift.

*Mayhew v. Mayhew*, 205 W. Va. 490, 497 n.15, 519 S.E.2d 188, 195 n.15 (1999). To meet its burden in this case, North Hills had to prove each element of its tort claims for negligence, trespass, nuisance, and breach of fiduciary duty. "[B]efore one can recover under a tort theory of liability, he or she *must prove each of the four elements* of a tort: duty, breach, causation, and damages." *Carter v. Monsanto Co.*, 212 W. Va. 732, 737, 575 S.E.2d 342, 347 (2002) (emphasis added). Proof that the plaintiff suffered an injury is a required element of all torts. "[A] plaintiff's burden of proof is to show that a defendant's breach of a particular duty of care was a proximate cause of the plaintiff's injury[.]" *Mays v. Chang*, 213 W. Va. 220, 224, 579 S.E.2d 561, 565 (2003) (per curiam). *See also Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013) ("[T]here is no tort—common law, statutory, or constitutional—without an injury[.]"); *Unitednet Ltd. v. Tata Commc'ns Am., Inc.*, 112 F.4th 1259, 1267 (10th Cir. 2024) ("[D]efendants' alleged conduct did not become an actionable tort until plaintiffs suffered an injury[.]"); *Koeppel v. Speirs*, 808 N.W.2d 177, 185 (Iowa 2011) ("It is axiomatic that there can be no tort if there is no injury.").

---

it is customary to require the party seeking relief to carry the burden of persuasion[.]"); *Lively v. Rufus*, 207 W. Va. 436, 446, 533 S.E.2d 662, 672 (2000) ("Normally, the plaintiff in a tort action is required to prove both the defendant's liability and the damages he or she has suffered as a result of the defendant's wrongdoing.").

To establish its tort claims, then, North Hills had to prove that it suffered an injury. The injury North Hills claimed in this case stems from Webb petitioners' purported contamination of the North Hills tract. To determine whether the circuit court abused its discretion by disturbing the jury's verdict regarding North Hills' alleged injury resulting from Webb Construction's injection of fracking waste, we review the trial evidence presented on this issue.

North Hills' primary witness on the alleged contamination caused by Webb Construction's injection activities at Well 508 was Marc Glass, an expert in the fields of environmental science and environmental remediation. Mr. Glass testified that he visited the North Hills tract twice, and in 2020 he observed the full length of the Webb-installed pipeline. He also took soil samples from various locations where he suspected contamination, and cut sections from the pipeline (capping the open ends left behind), so the soil and residue inside the pipe sections could be tested for contaminants. He stated that Well 508 was unsecured and parts of the pipeline "get[] driven over," he assumed by "logging equipment."[18] Although test results from the samples collected by Mr. Glass revealed the presence of various compounds consistent with fracking fluids, such as heavy metals and certain chemicals, he admitted the levels present did not exceed any health-based standards. He described a "synergistic effect" caused when chemicals

---

[18] North Hills' Board President, Ms. Hamilton, and Mr. Webb both testified that North Hills authorized timbering on the North Hills tract.

21

combine and create a different health risk than a single chemical, but he found only the "*potential* for synergistic effects" present at the site. (Emphasis added). On cross examination, Mr. Glass reiterated that none of the compounds found in the soil samples collected from the North Hills tract "exceed health-based standards." While Mr. Glass's testimony established the presence of various substances on the North Hills tract, it falls short of requiring the jury's verdict to be set aside because none of the substances were present at a level that exceeded any health-based standards. Thus, Mr. Glass's testimony simply does not render the jury's verdict unsupportable by the clear weight of the evidence.

North Hills also called defendant Mr. Webb, who stated that Webb Construction obtained a UIC permit for Well 508 from DEP,[19] and that DEP regularly inspected the site. He also described the injection process, explaining that Webb Construction transported fracking waste fluid to the Webb parcel in tanker trucks. They would take a sample of the fluid and then pump it into an aboveground storage tank. A lab would test the sample and send the results to DEP. Once DEP approved the sample, Webb Construction would run the fluid from the storage tank through a filtering system to remove

---

[19] North Hills presented evidence that DEP had cited Webb Construction for injecting Well 508 prior to obtaining the UIC permit. However, Mr. Webb testified that when he received the citation, he had already submitted Webb Construction's application for the UIC permit and obtained verbal permission to inject the well to determine if it would accept fluids. He stated that the inspector did not know of the verbal permission and issued the citation. Thereafter Webb Construction received the UIC permit, and DEP abated the citation.

debris larger than five microns and then inject it into the well. Mr. Webb stated, "everything that went in that well was approved by the DEP," and that DEP never cited him for injecting a fluid without proper sampling and DEP approval. On cross examination, he stated that DEP had never revoked a permit issued to him and never questioned the integrity of any of his wells. Referring to the 2016 circuit court proceedings underlying *Webb-I*, Mr. Webb testified that "the day that the judge made his ruling I stopped everything," and he had not "put a drop of water through that pipeline or down in that well since." Mr. Webb's unrefuted testimony does not allude to any injury suffered by North Hills resulting from Webb Construction's injection of fracking waste into Well 508. Instead, he explained that Webb injected Well 508 pursuant to a DEP-issued UIC permit expressly authorizing Webb Construction to inject fracking waste, and DEP regularly inspected Webb Construction's operation. Mr. Webb further described how DEP received lab results for each tanker of fracking fluid Webb Construction intended to inject into Well 508, and how DEP approved those fluids before Webb injected them into the well. Clearly, Mr. Webb's testimony provides no justification for disturbing the jury's verdict as to North Hills' tort claims.

The final witness who provided testimony relevant to Webb Construction's alleged contamination of the North Hills tract was Terry Urban, a DEP inspector who inspected Webb's operations at Well 508. He testified on direct examination that during his monthly inspections, he found Webb Construction's pipes were maintained. He observed small leaks that Webb repaired and described one instance when only about ten

23

gallons of fluid leaked onto the ground, which Webb restored per Inspector Urban's instructions. On cross examination, Inspector Urban described Mr. Webb as "a good operator" who did "everything I asked him to do," did not "pinch pennies about making fixes," and "was quick" about making fixes. Inspector Urban testified that, although he had issued citations to Mr. Webb in the past, none of them were related to "threatening . . . public health" or "safety." Inspector Urban also described an incident in January 2018 when a caller reported a leak at the site of Well 508. When Inspector Urban arrived at the well, the news media had a camera crew set up and a crowd of people had gathered at the site. When he went back the next day to examine the leak, he discovered that someone had sprayed used motor oil on the pipeline and there was no leak, stating "it was made up." He explained that the substance reportedly had come out of the well, which "was not hooked up to be pumped into." He also described a break-in at the site. Presumably referring to Mr. Webb, Inspector Urban testified, "I don't know the exact timing—I know he had somebody break into his facility up there and they was up there scooping his pipelines out that's—exactly—they was planning their poison." Again, Inspector Urban's unrefuted testimony does not support the circuit court's decision to set aside the jury's defense verdict. Inspector Urban found Mr. Webb to be a "good operator" who quickly and diligently made repairs. Further, none of the citations Inspector Urban issued to Webb in relation to Well 508 implicated public safety or health. Finally, Inspector Urban's testimony raised the specter of someone fabricating a leak at the site to garner a negative impression of the Webb petitioners from the media and the public.

24

The testimony described above highlights the circuit court's error in concluding that Webb petitioners did not contradict or rebut the testimony North Hills presented. Though Webb petitioners did not offer their own witnesses, they elicited favorable information through cross-examining North Hills' witnesses and emphasized the weaknesses in North Hills' case.

As the plaintiff in this action, it was incumbent on North Hills to prove its case.

> It is elementary law that when a plaintiff comes into court in a civil action he must, to justify a verdict in his favor, establish his case . . . . The burden of proof, meaning the duty to establish the truth of the claim . . . rests upon him from the beginning, and does not shift, as does the duty of presenting all the evidence bearing on the issue as the case progresses.

*Burk v. Huntington Dev. & Gas Co.*, 133 W. Va. 817, 830, 58 S.E.2d 574, 581 (1950), *modified on other grounds by Foster v. City of Keyser*, 202 W. Va. 1, 501 S.E.2d 165 (1997). North Hills presented evidence that Webb Construction violated the parties' lease agreement by injecting fracking waste into Well 508, a fact previously established in North Hills' first action against Webb and affirmed by this Court in *Webb-I*. However, Webb Construction's violation of the parties' lease agreement does not establish that North Hills suffered an injury that may be remedied in tort. Instead, the evidence discussed above supports the jury's defense verdict because: (1) Webb Construction complied with DEP

25

requirements for injecting fracking waste into a well; and (2) soil samples from the North Hills tract showed no substances present at a level that exceeded health-based standards.

North Hills' failure to convince the jury that it met its burden of proof simply does not entitle it to a new trial. *See Granados v. Wilson*, 523 P.3d 501, 516 (Kan. 2023) (acknowledging that a "party bearing the burden of production and persuasion [is] not entitled to remand for new trial after failing to sustain its burden of proof—'its case should ordinarily have to stand or fall on the record it makes the first time around'" (quoting *State v. Dailey*, 497 P.3d 1153, 1155 (Kan. 2021))); *DeVittorio v. Werker Bros., Inc.*, 634 N.E.2d 528, 532 (Ind. Ct. App. 1994) ("[A] party's failure to present evidence at trial sufficient to sustain the burden of proof on an essential element of his claim is clearly not grounds for a new trial.").

We generally afford deference to a trial court in deciding whether to grant a motion for new trial. *See* Syl. pt. 1, *Burke-Parsons-Bowlby Corp*, 230 W. Va. 105, 736 S.E.2d 338 (acknowledging that "the rulings of the circuit court concerning a new trial" are reviewed "under an abuse of discretion standard"); *see also* Syl. pt. 1, *Asbestos Litig.*, 193 W. Va. 119, 454 S.E.2d 413 ("It takes a stronger case in an appellate court to reverse a judgment awarding a new trial than one denying it and giving judgment against the party claiming to have been aggrieved." (quotations and citations omitted)). However, "a new trial should rarely be granted and then granted only where it is "'reasonably clear that

prejudicial error has crept into the record or that substantial justice has not been done.""" *Neely*, 222 W. Va. at 566, 668 S.E.2d at 195 (quoting *Asbestos Litig.*, 193 W. Va. at 124, 454 S.E.2d at 418). In this appeal, there is no allegation of prejudicial trial error, such as improper argument by counsel, the exclusion of admissible evidence, the improper admission of evidence, or incorrect jury instructions, that warranted granting North Hills a second chance to prove its case. Additionally, both the circuit court and North Hills have failed to explain how "the verdict is against the clear weight of the evidence, is based on false evidence[,] or will result in a miscarriage of justice[.]" Syl. pt. 3, in part, *Asbestos Litig.*, 193 W. Va. 119, 454 S.E.2d 413. Thus, because this case was fairly tried, the circuit court should have accepted the jury's verdict and denied North Hills' motion for a new trial as to its tort claims.

We find the circuit court abused its discretion by vacating the jury's defense verdict as against the weight of the evidence and granting North Hills a new trial on its tort claims despite North Hills' failure to prove that it suffered any injury resulting from Webb's actions. *See* Syl. pt. 3, in part, *Burk*, 133 W. Va. 817, 58 S.E.2d 574 ("In an action at law tried before a jury, the burden rests upon the plaintiff to establish his case . . . and if all the evidence in the case fails to establish his claim . . . the verdict should be for the defendant.").

### B. North Hills' Unjust Enrichment Claim

We treat North Hills' claim for unjust enrichment separately because "[a] claim [for unjust enrichment] is neither in tort nor contract but is described as a claim in quasi contract or a contract implied in law." *Booe v. Shadrick*, 369 S.E.2d 554, 556 (N.C. 1988). At the close of North Hills' case, Webb petitioners sought judgment as a matter of law on this claim, arguing that the parties' lease agreement precluded this quasi-contract claim. The circuit court denied Webb petitioners' motion, but failed to address whether the lease agreement precluded a claim for unjust enrichment, instead finding that the jury could conclude that Webb petitioners had been unjustly enriched.[20] Before this Court, Webb petitioners reiterate their contention that North Hills may not assert a quasi-contract claim when the litigants have an express contract relating to the same subject matter, and argue that the circuit court therefore erred by granting a new trial on this issue. North Hills does not respond to Webb petitioners' assigned error, instead simply explaining that it established the elements of a claim for unjust enrichment.

---

[20] We note, however, that the verdict form returned by the jury contained no item of damages related to unjust enrichment. "A claimant seeking restitution for unjust enrichment can generally recover the value of the benefit conferred upon the party unjustly enriched." *Pruitt v. Barclay*, 663 S.W.3d 799, 806 (Ark. Ct. App. 2023). The verdict form in this case allowed the jury to return damages only for repair costs, diminution of real property, and loss of use. Thus, even if North Hills could properly have pursued an unjust enrichment claim in this case, the jury was not asked to award damages for Webb's purported unjust enrichment.

28

This Court has held that "As a species of quasi contract relief, unjust enrichment does not exist to provide an alternative means of recovery for breach of contract, nor does it exist to reduce contract disputes to a question of whether one party benefitted from the other party's performance." Syl. pt. 3, *Gulfport Energy Corp. v. Harbert Priv. Equity Partners, LP*, 244 W. Va. 154, 851 S.E.2d 817 (2020).

North Hills' unjust enrichment claim is based on its allegation that Webb petitioners received substantial compensation from well operators for disposing of their fracking waste by injecting it underground on the North Hills tract. However, the parties' lease agreement governed Webb Construction's injection activities on the North Hills tract and specifically addressed the conditions required before Webb Construction could inject Well 508, the substances Webb Construction had authority to inject, and Webb's obligation to make annual injection payments to North Hills. The fact that the parties' lease governed Webb Construction's injection activities is apparent from findings included in the circuit court's order setting aside the jury's verdict and granting a new trial. The circuit court expressly found that the "trial concerned the acts or omissions of [the Webb petitioners] concerning a 2008 Oil and Gas Lease," and concluded that the Webb petitioners "violated" the lease "by injecting an unknown amount of substances from unknown sources into the 508 well." The court quoted multiple excerpts from *Webb-I* discussing lease provisions specifically related to Webb Construction's right to inject Well 508 and found them determinative of North Hills' claims, including its claim for unjust enrichment.

29

Furthermore, North Hills does not dispute that the lease agreement provided for annual injection payments by Webb Construction in exchange for its right to inject certain fluids into Well 508. Thus, because the subject matter of North Hills' claim is governed by the lease, i.e., Webb's injections into Well 508, North Hills cannot recover through a quasi-contract claim for unjust enrichment. "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." Syl. pt. 2, *Gulfport*, 244 W. Va. 154, 851 S.E.2d 817. Therefore, the circuit court abused its discretion by vacating the jury's verdict and granting North Hills a new trial on this untenable claim. "Where the trial court improperly sets aside a verdict of a jury, such verdict will be reinstated by this Court and judgment rendered thereon." Syl. pt. 1, *Maynard v. Adkins*, 193 W. Va. 456, 457 S.E.2d 133 (1995) (quoting Syl. pt. 4, *Bronson v. Riffe*, 148 W. Va. 362, 135 S.E.2d 244 (1964)).

In summary, we conclude that the circuit court abused its discretion by vacating the jury's defense verdict and granting a new trial because the circuit court erred by (1) finding the jury's verdict as to North Hills' tort claims was against the weight of the evidence when the trial evidence amply supported the jury's defense verdict, and (2) granting a new trial on North Hills' unjust enrichment claim when that quasi-contract claim is barred by the parties' lease agreement. In these circumstances, we must protect the jury's vital constitutional role in our legal system and reverse the circuit court's decision. "[W]hen we find that the lower court has abused its discretion, we will not hesitate to right

30

the wrong that has been committed." *Potomac Comprehensive Diagnostic & Guidance Ctr., Inc. v. L.K. by Young*, 250 W. Va. 102, ___, 902 S.E.2d 434, 452 (2024) (quoting *Rollyson v. Jordan*, 205 W. Va. 368, 379, 518 S.E.2d 372, 383 (1999)).

## IV.

## CONCLUSION

For the reasons explained in this opinion, we reverse the order of the Circuit Court of Fayette County entered on September 16, 2022, and remand this case with directions to reinstate the jury's verdict in favor of Webb petitioners and to enter judgment in accordance with the verdict.

Reversed and Remanded.

31